DOCKETED
JUL 1 6 2004

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

TIMOTHY FINWALL,                    )
                                    )
            Plaintiff,              )       **04C  4663**
                                    )
      v.                            )
                                    )
CITY OF CHICAGO, DETECTIVE          )
MARTIN GARCIA, DETECTIVE DION       )       **JUDGE MANNING**
BOYD and MARY BOSWELL,              )
                                    )
            Defendants.             )       JURY TRIAL DEMANDED

**MAGISTRATE JUDGE BOBRICK**

### COMPLAINT

NOW COMES Plaintiff, TIMOTHY FINWALL, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO, MARTIN GARCIA, DION BOYD and MARY BOSWELL, as follows:

#### Introduction

1.   This case is brought under 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's constitutional rights.

2.   Specifically, as a result of egregious police misconduct described herein, Plaintiff was charged and prosecuted for the heinous crime of attempted child abduction, a crime of which he is completely innocent. This false prosecution was the direct result of misconduct by the Defendant Chicago Police Department Detectives including, *inter alia*, manipulating photographic and line-up identifications and inducing false testimony in order to close the case.

3.   Though this sham investigation was exposed at Plaintiff's criminal trial and Plaintiff was acquitted of all charges, the misconduct described herein has caused severe damage

1-1

to Mr. Finwall and his family and has left the true perpetrator at large to prey on other children.

4. Having had a fine and well-deserved reputation as an upstanding member of the Ashburn community where he has resided most of his life, Mr. Finwall has been forever besmirched by the false allegations that he committed crimes against children. Solely as a result of these false charges, Mr. Finwall is now often viewed by people in his community as unsavory and unfit to be in the company of children in the neighborhood in which he lives.

5. The taint from these charges affects not only his own day-to-day life, but that of his wife and his relatives, and threatens to cast a pall over the future social prospects for his own daughter, Victoria, as she grows-up in the community.

6. Mr. Finwall brings this action for damages and to clear his name, once and for all, of the false and foul taint that the Defendants have put on him.

<u>Jurisdiction and Venue</u>

7. This Court has jurisdiction of the action under 28 U.S.C. § 1331.

8. Venue is proper under 28 U.S.C. § 1391(b). All individual parties reside in this judicial district, the City of Chicago is a municipal corporation in this district, and the events giving rise to the claims asserted herein occurred within this district.

## The Parties

9.    Plaintiff, Timothy Finwall, is a 37 year citizen of Illinois, and lifetime Chicago resident. He is married and has a one year old daughter. From 1987 to 1995 Mr. Finwall served in the United States Marines and Marine Reserves and served in the Persian Gulf War in 1990 and 1991.

10.    Defendant City of Chicago is an Illinois municipal corporation, and is and/or was the employer of each of the Defendant Detectives. The City of Chicago is responsible for the acts of the Defendant Detectives while employed by the City of Chicago and while acting within the scope of their employment.

11.    At all times relevant, Defendants Martin Garcia and Dion Boyd were Detectives for the City of Chicago Police Department ("Department").

12.    Defendant Mary Boswell is an adult resident of Chicago, Illinois and is the mother of a minor girl referred to herein as P.S.

## Background

13.    On March 24, 2001, at approximately 3:00 p.m., the Department received a complaint from Defendant Mary Boswell that a white male had just approached her 8 year-old daughter, P.S., in a manner she considered to be improper.

14.    Defendants Garcia and Boyd proceeded to interview Mrs. Boswell and P.S. two days later. P.S. reported that the man approached her on foot while she was playing in the yard of her home and asked her if she wished to accompany him on a "field trip" to take place the following day. P.S. further stated that the man told her that her parents could come along if they wished

3

and that the man mentioned by name a classmate of hers, Y.G., whom he told her would be coming on the trip.

15.   Mrs. Boswell informed Defendants that she was inside her home, when she heard the sound of a male voice conversing with P.S.  Mrs. Boswell stated that she came out of the side door of her house, saw the man on her property, and told him to leave.  She stated that the man then turned and walked away in an unknown direction.  Mrs. Boswell described the man as approximately 35 years old, 5'9" and 160 lbs.

16.   The case report taken after Mrs. Boswell phoned the police specifically states that it is unknown whether the man left in a vehicle.  This fact is significalnt because it is not a crime in Illinois for an adult to have conversation with a child, and a necessary element of the crime of attempted abduction requires that the encounter between adult and child take place in the vicinity of a vehicle or building in which an abduction could take place.

17.   Thereafter, the Department distributed a composite picture of the man described by P.S. and Mrs. Boswell.

18.   At the time of the alleged encounter between the man and P.S., and for several hours both before and after that time, Plaintiff Finwall was at work in a tavern (coincidentally) named Gloria's Alibi, where Mr. Finwall was employed as a bartender for 10 years.

19.   On April 1, 2001, Boyd and Garcia allegedly received an anonymous report stating that the composite picture

4

resembled "a guy [that the anonymous informant] went to school with." The anonymous informant supposedly named Mr. Finwall.

20. Whether Defendants actually received such a tip or whether they found Mr. Finwall by reviewing prior mugshots and then fabricated the supposed anonymous tip that lead them to Finwall, it is undisputed that on or about April 1, 2001, Garcia and Boyd obtained Mr. Finwall's picture from a prior arrest as well as his address, telephone number, date of birth, drivers license, license plate number and car registration, learning that he drove a green 1992 Honda Civic.

21. The Defendants learned that Mr. Finwall had been arrested in 1988 (approximately thirteen years prior to that time) for the crime of disarming a police officer. This was Mr. Finwall's sole arrest and Defendants Garcia and Boyd were apprised of that fact by the report.

22. Far from having committed a crime against a police officer, this incident actually involved Mr. Finwall disarming an intoxicated, off-duty Chicago police officer who was pointing his duty weapon at Plaintiff's friend's head. Mr. Finwall pleaded guilty to the offense of disarming an officer in order to avoid a trial and did not serve any jail time. The facts that Mr. Finwall pleaded guilty and that he did not serve any time for this crime were known to both Boyd and Garcia at all relevant times.

23. On information and belief, the fact that Mr. Finwall had been arrested for a crime involving one of their fellow police officers and did not receive any sentence motivated

5

Boyd and Garcia, at least in part, to punish Mr. Finwall by having him convicted for a crime involving P.S., regardless of guilt or innocence.

### Defendants Boyd and Garcia Attempt To Frame Mr. Finwall

24. Upon learning of Mr. Finwall's prior arrest for disarming a police officer, Defendants Boyd and Garcia compiled a photo array using the 13 year-old photograph of Mr. Finwall from that arrest. The composition of this photo-array was unfairly suggestive. In the alternative, on information and belief, Defendants Boyd and Garcia unfairly suggested which picture they believed to be the perpetrator.

25. Nevertheless, P.S. did not identify Mr. Finwall as the offender.

### Garcia and Boyd Fabricate A Key Element of The Crime

26. A key element of the crime is that the offender be in proximity, *inter alia*, of a vehicle which would allow the offender to abduct the child. Based on all of the above, Garcia and Boyd attempted to have Mr. Finwall charged with the crime of attempted child abduction.

27. As stated above the General Offense Case Report for the P.S. incident specifically states that it was unknown whether the perpetrator had fled in a car. Moreover, Boyd and Garcia's hand-written progress notes from the initial interview of Mrs. Boswell and P.S. on March 26, 2001, make no mention that either P.S. or Boswell observed the perpetrator near a vehicle, and the arrest report for Mr. Finwall specifically states that

6

the offender left "On Foot" in the field for make/model/year of the arrestee.

28. Despite these facts, Boyd and Garcia's typewritten progress report, prepared after the above mentioned documents, states that P.S. told them that she saw the perpetrator near a green car. Boyd and Garcia had no information about Mr. Finwall's vehicle at the time the General offense Case Report and the written notes of the March 26 interviews were created. However, by the time they typed the above report they knew from public records that Mr. Finwall drove a green 1992 Honda Civic car.

29. On information and belief, upon speaking with an Assistant States Attorney to approve the child abduction charges, Boyd and Garcia learned that even though they had successfully obtained a (false) identification of Mr. Finwall, the conduct they attributed to him would not be a crime unless a vehicle was involved. Accordingly, in order to have Mr Finwall prosecuted, they fabricated the involvement of a green automobile, and falsely included it in the typewritten report for purposes of continuing a prosecution of Plaintiff.

30. On information and belief, Defendants Boyd and Garcia also coerced Boswell to change her account of what happened (i.e. she did not know if a car was involved) in order to include details about the use of a vehicle. Specifically, Boyd and Garcia told Mrs. Boswell falsely that Mr. Finwall had previously accosted other children, telling her that he had "done this before" and indicating to her that they had been unable to

7

get him"off the streets." Boyd and Garcia further told Ms. Boswell that unless she could include a vehicle in her account of the event that Mr. Finwall would be left at large to continue to accost children. This was a complete fabrication, defamatory, and intended to coerce and intimidate Ms. Boswell into changing her story.

31. In this manner Boyd and Garcia preyed on Mrs. Boswell's fears as a mother in a manner which they knew or reasonably expected would induce her to modify her previous accounts. Boyd and Garcia also knew that witnesses recollections can be manipulated through suggestions and coercion and that they could induce a witness to unwittingly modify a previous account in a manner which made it false.

32. Pleading in the alternative, on information and belief, due to the fact that all prior reports indicated that there was no vehicle involved, Defendant Boswell intentionally and knowingly changed her story to include this detail upon learning that she would be unable to obtain a conviction of Mr. Finwall without it.

The True Perpetrator Remains At Large And Strikes Again

33. Information about the incident involving P.S. spread throughout the neighborhood. On April 4, 2001, a neighbor allegedly contacted Boswell to tell her that her daughter, referred to herein as S.S., had been accosted at approximately 4:00 p.m. that day by a man exhibiting a similar *modus operandi* to the man in the incident with P.S.

34.  According to the report, while S.S. was playing near her home, a man approached her, grabbed her arm and asked her if she wanted some candy.  The unknown man also allegedly mentioned that he knew one of S.S.'s third grade classmates.

35.  Mr. Finwall could not have committed this alleged crime.  On April 4, 2001, Mr. Finwall was golfing with two friends, Steve Stack and Garry Konchar.  Mr. Finwall drove with Mr. Stack and they arrived at Fountain Hills golf course at 12:45 or 1:00 p.m.  They played golf together for the next several hours and left at or about 4:45 p.m.  Mr. Finwall drove Stack home and dropped him off at his home at approximately 5:00 p.m. Stack then went directly to the bar where Mr. Finwall worked as a bartender at the time.  A few minutes later, Mr. Finwall arrived at the bar and worked the entire evening.

Garcia and Boyd Arrest and Abuse Mr. Finwall For Over 48 Hours

36.  On April 11, 2001 at 6:15 p.m., Defendants Boyd and Garcia entered Mr. Finwall's place of employment and arrested him.  They took him to the Area 1 police headquarters and placed him in a line-up that evening which was viewed by Defendant Boswell, P.S., S.S. and Y.G.  Defendants Boyd and Garcia created a suggestive lineup consisting solely of Mr. Finwall and four other police officers and used other suggestive tactics. Boswell, P.S. and S.S. identified Mr. Finwell as a direct and proximate result.  Notwithstanding these tactics, Y.G. still did not identify him.

37.  After obtaining this identification, Defendants Boyd and Garcia continued to hold Mr. Finwall in an interrogation

room in the Area 1 headquarters for more than two days. During this period of time they placed Mr. Finwall in additional line-ups to attempt to pin other, similar crimes on him, but in each instance the witnesses failed to identify him.

38. Moreover, during this time, Defendants Boyd and Garcia inflicted punishment on Mr. Finwall. They kept Mr. Finwall handcuffed to a wall in the small interrogation room, providing him little sustenance and denying him access to a restroom, forcing him to urinate on the floor of the room. The sole furnishing in the room was a small four foot by ten inch metal bench and Mr. Finwall was provided no bedding for sleep during the entire time.

39. Due to Boyd and Garcia's conduct, Mr. Finwall did not receive a bond hearing for more than 48 hours.

### Mr. Finwall Is Acquitted

40. On July 22, 2002, after a full trial, Mr. Finwall was acquitted of all charges.

### COUNT I – 42 U.S.C. § 1983
### False Arrest/False Imprisonment Against Defendants Boyd and Garcia

41. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

42. Plaintiff was seized, arrested, and placed into a police car, and incarcerated despite the Defendant Officers' knowledge that there was no probable cause for doing so and knowledge that Mr. Finwall was innocent. Defendants Boyd and Garcia arrested Plaintiff in order to fabricate a case against

him for the two alleged child abduction charges as well as other crimes.

43.     In the manner described in the preceding paragraph, Defendants Boyd and Garcia unlawfully restrained Plaintiff's freedom of movement by detaining him in at the Chicago Police Department District Station for an excessive and unreasonable length of time.

44.     As a result of this misconduct, Plaintiff has suffered, and continues to suffer, injuries including pain and suffering as well as the loss of his employment.

45.     Defendant Officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

## COUNT II - 42 U.S.C. § 1983
### False Arrest/False Imprisonment Against City of Chicago

46.     Plaintiff realleges the foregoing paragraphs as if fully stated herein.

47.     The misconduct described in Count I was undertaken under the policy and practice of the Chicago Police Department in that:

a.     As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.     As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct

11

at issue here by failing to adequately punish and discipline
prior instances of similar misconduct, thereby leading Chicago
Police Officers to believe their actions will never be
scrutinized and, in that way, directly encouraging future abuses
such as those affecting Plaintiff; specifically, Chicago Police
Officers accused of excessive force can be confident that the
Office of Professional Standards will not investigate those
accusations in earnest and will refuse to recommend discipline
even where the Officer has engaged in excessive force;

     c.   Generally, as a matter of widespread practice so
prevalent as to comprise municipal policy, officers of the
Chicago Police Department abuse citizens in a manner similar to
that alleged by Plaintiff in this Count on a frequent basis, yet
the Chicago Police Department makes findings of wrongdoing in a
disproportionately small number of cases;

     d.   Municipal policy-makers are aware of, and condone
and facilitate by their inaction, a "code of silence" in the
Chicago Police Department, by which officers fail to report
misconduct committed by other officers, such as the misconduct at
issue in this case;

     e.   The City of Chicago has failed to act to remedy
the patterns of abuse describe in the preceding sub-paragraphs,
despite actual knowledge of the same, thereby causing the types
of injuries alleged here;

     f.   As a matter of express policy, the City of Chicago
does not retain any records which are more than five years old
documenting allegations of excessive force against police

officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row, the Office of Professional Standards ("O.P.S.") or the Internal Affairs Division ("I.A.D.") is forbidden by the City from considering those allegations if they are deemed unsustained; and

h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

48. At the time Mr. Finwall was arrested, there was pending against Defendant City of Chicago a putative class action, *Lopez v. City of Chicago, et al.*, 01 C 1823, in which Mr. Finwall was a class member. Limitation on his claims against Chicago were tolled by that case and remained so at least until May of 2004 when the Plaintiff in that case withdrew a pending motion for class certification.

### COUNT III – 42 U.S.C. § 1983
### Unlawful Detention Against Defendants Boyd and Garcia

49. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

13

50. As described more fully above, Defendants Boyd and Garcia detained Plaintiff for an unreasonable period of time and under unreasonable conditions of confinement in order to falsify evidence to tie him to various crimes.

51 The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

52. As a result of this misconduct, Plaintiff sustained serious emotional injuries.

### COUNT IV – 42 U.S.C. § 1983
### Unlawful Detention Against Defendant City of Chicago

53. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

54. The misconduct described in Count III was undertaken under the policy and practice of the Chicago Police Department in the manner described more fully above.

55. As a result of this misconduct, Plaintiff sustained serious physical and mental distress.

### COUNT V – 42 U.S.C. § 1983
### Due Process

56. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

57. As described more fully above, Defendant Officers, while acting under color of law and within the scope of their employment as police officers, violated Plaintiff's right to Due Process, *inter alia*, by tampering with identification, anecdotal, and testimonial evidence. Absent this misconduct, the

prosecution of Plaintiff could not and would not have been pursued.

58.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

59.  The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described more fully above.

### COUNT VI - 42 U.S.C. § 1983
### Conspiracy Against Defendant Boswell

60.  Plaintiff realleges the foregoing paragraphs as if fully stated herein.

61.  As described more fully in the preceding paragraphs, Defendant Boswell knowingly acted in concert with Defendants Boyd and Garcia to deprive Plaintiff of his Constitutional rights under color of law.

62.  Plaintiff was deprived of his constitutional rights in the manner described in the preceding paragraphs.

63.  In furtherance of the conspiracy, Defendant Boswell committed overt acts of knowingly providing false information and testimony and was an otherwise willful participant in joint activity with state actors acting under color of law.

64.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

65.  As a proximate result of Defendant's conspiracy, Plaintiff suffered damages, including severe physical and emotional distress and anguish.

66.  The conspirators committing the misconduct described in this Count were motivated by personal bias in terms of their own self-interest

### COUNT VII - State Law Claim
### Malicious Prosecution Against Defendant Boswell

67.  Plaintiff realleges the foregoing paragraphs as if fully stated herein.

68.  Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

69.  Defendant Boswell accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and she made statements to victims and prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

70.  On information and belief, Defendant Boswell's statements about Plaintiff's alleged culpability were made with knowledge that the statements were false and perjured.  In so doing, Defendant Boswell fabricated evidence and withheld exculpatory information.

71. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

72. As a result of this misconduct, Plaintiff has suffered and continues to suffer injuries including pain and suffering as well as the loss of his employment.

### COUNT VIII -- State Law Claim
### Intentional Infliction of Emotional Distress

73. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

74. The acts and conduct of Defendant Officers and Mary Boswell as set forth above were extreme and outrageous. Defendant Officers and Mary Boswell intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Finwall.

75. Mr. Finwall was acquitted of the charges against him in a manner indicative of his innocense.

76. Defendant Officers' and Mary Boswell's actions and conduct did directly and proximately cause severe emotional distress to Mr. Finwall and thereby constituted intentional infliction of emotional distress.

77. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

78. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

17

### COUNT IX – State Law Claim
### *Respondeat Superior* – Intentional Infliction
### of Emotional Distress

79. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

80. In committing the acts alleged in the preceding paragraphs, the Defendant Detectives were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment.

81. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### COUNT X – State Law Claim
### Indemnification

82. Plaintiff realleges the foregoing paragraphs as if fully stated herein.

83. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

84. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

### Request for Relief

Plaintiff, TIMOTHY FINWALL, respectfully requests that the Court:

A. enter judgment in his favor and against Defendants, CITY OF CHICAGO, DETECTIVES GARCIA and BOYD, and MARY BOSWELL;

B. award compensatory damages against Defendants, CITY OF CHICAGO, DETECTIVES GARCIA and BOYD, and MARY BOSWELL;

C.   award attorneys' fees against Defendants, CITY OF CHICAGO, DETECTIVES GARCIA and BOYD, and MARY BOSWELL;

D.   award punitive damages against DETECTIVES GARCIA and BOYD in their individual capacities and against MARY BOSWELL; and

E.   grant any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, TIMOTHY FINWALL, hereby demands a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

Arthur Loevy
Mark Reyes
Michael Kanovitz
Jon Loevy
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

Civil Cover Sheet                                                                 Page 1 of 1



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

# Civil Cover Sheet

**DOCKETED**
JUL 1 6 2004

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

| | |
|---|---|
| Plaintiff(s): Timothy Finwall | Defendant(s):City of Chicago, Detective Martin Garcia, Detective Dion Boyd and Mary Boswell |
| County of Residence: Cook | County of Residence: |
| Plaintiff's Atty: Loevy & Loevy<br>312 N. May St., Suite 100<br>Chicago, IL 60607<br>(312) 243-5900 | Defendant's Atty: |

**JUDGE MANNING**

II. Basis of Jurisdiction:        **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties
(Diversity Cases Only)

Plaintiff:- N/A
Defendant:- N/A

**04C 4663**

IV. Origin :        **1. Original Proceeding**

V. Nature of Suit:        **440 Other Civil Rights**

**MAGISTRATE JUDGE BOBRICK**

VI.Cause of Action:        **42 U.S.C. Section 1983**

VII. Requested in Complaint
Class Action:
Dollar Demand:
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: _____ 7/15/04

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**        Revised: 06/28/00

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

Timothy Finwall
v.
City of Chicago, Detective Martin Garcia, Detective Dion
Boyd and Mary Boswell

**DOCKETED**
**JUL 1 6 2004**
**JUDGE MANNING**

Case Number:
**04C 4663**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

~~MAGISTRATE JUDGE DODRICK~~

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Jon Loevy | NAME  Arthur Loevy |
| FIRM  Loevy & Loevy | FIRM  Same |
| STREET ADDRESS  312 N. May St., Suite 100 | STREET ADDRESS |
| CITY/STATE/ZIP  Chicago, IL 60607 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 243-5900 / FAX NUMBER (312) 243-5902 | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  02618254 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  1682479 |
| MEMBER OF TRIAL BAR?  YES ☑  NO ☐ | MEMBER OF TRIAL BAR?  YES ☑  NO ☐ |
| TRIAL ATTORNEY?  YES ☑  NO ☐ | TRIAL ATTORNEY?  YES ☑  NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Michael Kanovitz | NAME  Mark Reyes |
| FIRM  Same | FIRM  Same |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6275233 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6209841 |
| MEMBER OF TRIAL BAR?  YES ☑  NO ☐ | MEMBER OF TRIAL BAR?  YES ☐  NO ☑ |
| TRIAL ATTORNEY?  YES ☑  NO ☐ | TRIAL ATTORNEY?  YES ☑  NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |

1-3