IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY FINWALL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 4663 |
| | ) | Judge Blanche Manning |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, MARTIN GARCIA, | ) | |
| DION BOYD, and MARY BOSWELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

"'We live in a world of deadlines. . . . The practice of law is no exception.'"
*Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir. 2006)

Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to deadlines do so at substantial peril to their and their clients' interests. Even a day's delay can be fatal. *Raymond*, 442 F.3d at 600; *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996).[1] Indeed, as Judge Easterbrook has warned, ignoring deadlines is the surest way to lose

---

[1] Concerns about delays are nothing new either in law or life. *See Mallory v. Kirwan*, 2 U.S. 192, 193 (1792); *The Key City*, 81 U.S. 653, 655 (1871); *Curtner v. United States*, 149 U.S. 662, 676 (1893); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982)(encouragement of delay is fatal to the vindication of the criminal law); *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 533 (N.D.Ill. 2005)(collecting cases); *United States ex rel. Tyson v. Amerigroup Illinois*, 230 F.R.D. 538, 545 (N.D.Ill. 2005). Shakespeare warned of the dangers of delay: "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33. The Seventh Circuit is partial to Twelfth Night.
(continued...)

a case. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994). *See also Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996).

Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is especially important. Nonetheless, according to the City of Chicago, the plaintiff has ignored the expert discovery deadlines set by Judge Manning and is unapologetic for its flagrant noncompliance. Not surprisingly, the City of Chicago has moved to bar the testimony of four expert witnesses of the plaintiff. *See* Rule 37(c)(1) Federal Rules of Civil Procedure.

## I.

## BACKGROUND

Plaintiff filed the underlying suit on July 15, 2004, claiming that he was falsely arrested by the defendants. The allegation arises out of events occurring on March 24, 2001 and April 5, 2001. On the 24th, a man allegedly approached a girl and asked her if she wanted to go on a field trip. On April 5th, a man allegedly approached a girl, asked her if she wanted candy, and grabbed her arm. The plaintiff became a suspect in both of these incidents, was arrested, and prosecuted for child abduction. His trial resulted in an acquittal. (*Complaint*, ¶ 40). Plaintiff claims that Chicago Police officers manipulated information in their report in order to facilitate his arrest. (*Plaintiff's Response to Defendants' Motion to Bar*, at 2-4). In support of his case, plaintiff has tendered four expert witnesses: John Edward Mundt, Ph.D., a licensed clinical psychologist; Wayne Anderson, an automotive mechanic; Dr. Solomon Fulero,

---

[1](...continued)
*Saunders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995)("in delays there lies no plenty."). No matter. The point is the same.

an expert in eyewitness identification; and Paul Palumbo, a criminologist. (*Defendants' Motion to Bar*, Exs. D-H). The defendants have moved to bar the opinions of those four expert witnesses for plaintiff's failure to comply with the disclosure requirements of Rule 26(a)(2) in a timely manner.

## A.
## The Discovery Schedule

Judge Manning set the initial timetable for discovery on February 18, 2005. Fact discovery was to close on September 1, 2005, and expert discovery was to close October 1, 2005. (*Defendants' Motion to Bar*, Ex. A (Dkt. #29)). The parties jointly sought an extension of these deadlines on July 27, 2005, and, on August 2, 2005, Judge Manning revisited her scheduling order and granted what she described as a "generous extension" of the fact and expert discovery cutoffs. She allowed fact discovery to be extended until November 25, 2005, and expert discovery to January 15, 2006. Judge Manning made it clear that the court would "not entertain further requests for extensions" and admonished counsel to "ensure that discovery is completed by the cut off." (*Defendants' Motion to Bar*, Ex. B (Dkt. #35)).

This schedule was amended, ever so slightly, pursuant to the agreement of the parties on November 22, 2005, when Judge Manning permitted a very limited extension covering just three additional fact discovery depositions to be completed before December 16, 2005. (*Defendants' Motion to Bar*, Ex. C, (Transcript of 11/22/05)). In that proceeding, counsel for the plaintiff assured the court that this final extension would not push back any of the other deadlines, including the expert discovery deadline of January 15, 2006. (*Id.*). Judge Manning then referred all further supervision of discovery matters, rulings on nondispositive pretrial motions, and participation in settlement discussions to me.

## B.
## Plaintiff's Production of His Expert Witness Reports

3

The plaintiff did not manage to make his expert witness disclosures until over a month later. On December 28, 2005, twelve business days prior to the expert discovery deadline, defendants received psychologist John Mundt's expert report via facsimile. (*Plaintiff's Response to Defendants' Motion to Bar*, at 5). Plaintiff does not dispute that Dr. Mundt's report did not include his *curriculum vitae*, a prior list of cases in which he was employed as an expert, or a reference to rate of compensation for services – all of which are required under Rule 26(a)(2)(B). (*Defendants' Motion to Bar*, at 2; *Plaintiff's Response to Defendants' Motion to Bar*, at 5; Ex. A).

In the cover letter to the Mundt report, plaintiff promised Dr. Mundt's *CV* would be coming soon, but made no mention of the fee schedule or case list. Plaintiff also suggested that dates for a deposition might be discussed. On January 6, 2006, five business days before the close of expert discovery, defendants received a fax of Dr. Mundt's *curriculum vitae* and a copy of an invoice for his services but, to date, it is undisputed that defendants have not yet received a list of prior cases in which he gave expert opinions or testimony. (*Defendants' Motion to Bar*, at 2; *Plaintiff's Response to Defendants' Motion to Bar*, at 9-10). According to plaintiff, this is because Dr. Mundt has never served as an expert in any case over the last four years.

Also in the cover letter to Dr. Mundt's report, plaintiff indicated that he anticipated producing other expert reports by January 6th, but none were forthcoming by that date. The next report defendants received was Wayne Anderson's report, on January 9, 2005, less than a week before the close of expert discovery. (*Defendants' Motion to Bar*, at 2). Mr. Anderson's report consisted of an invoice, a resumé, and a one-paragraph letter written by Mr. Anderson. Mr. Anderson proposed to give an opinion regarding

4

the paint finishes on cars fading in the sun, although he admitted that "[n]o one can say exactly how much color fade would occur." (*Defendants' Motion to Bar*, Ex. F, at 1). There was no listing of prior cases in which Mr. Anderson acted as an expert witness. Then, on the afternoon of Friday, January 13th – one day before the close of expert discovery – the defendants received two additional expert witness reports, from Solomon Fulero and Paul Palumbo. Dr. Fulero criticized the techniques the defendants employed in assembling eye-witness testimony in plaintiff's case, and Mr. Palumbo offered a general critique of the defendants' investigation.

## C.
## The Parties' Positions

The defendants have several objections to these disclosures, not the least of which being their untimeliness. The defendants submit that it was incumbent upon the plaintiff to disclose his experts with sufficient time remaining in discovery to allow for the defendants to depose them. The unexplained lateness of the disclosures plainly did not leave sufficient time for that to be done. In addition, the defendants argue that the expert reports are incomplete: in various aspects. Mr. Mundt's report does not include a list of cases in which he has testified. According to the defendants, Mr. Anderson's opinions are not clear from his report, and he fails to adequately detail how he arrived at whatever opinions he might have. Mr. Fulero's report, the defendants complain, is unsigned, and also fails to adequately identify the data upon which he relied to form his opinions. The defendants have similar problems with Mr. Palumbo's report. (*Defendants' Motion to Bar*, at 6-10). As such, they ask that all four experts be barred from testifying under Rule 37(c)(1).

The plaintiff is unapologetic and offers no excuse for what appear to be the intentionally late

disclosures. Indeed, he goes so far as to actually blame the defendant – although the claimed misconduct has absolutely nothing to do with the timing of the disclosures. Reduced to its essentials, the argument is that so long as the disclosures were made by the January 15th deadline they were timely. The argument concludes with the extraordinary contention that even if they were not untimely, the testimony cannot be excluded because there is ample time before the trial for the witnesses to be deposed. If accepted, this argument would reduce Rule 37 to a dead echo and would empower a party, not the court, to set expert discovery deadlines.

## II.
## ANALYSIS

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Expert reports must be submitted at least 90 days before trial or at the time and in the sequence directed by the court. Rule 26(a)(2)(C).

## A.
## A Discovery Deadline Requires That All Discovery Be Completed By That Date

In setting the discovery schedule, Judge Manning could not have been clearer: she told counsel, in no uncertain terms, that discovery had to be completed by the deadline of January 15, 2006. If that were not clear enough, the Local Rules of the Northern District of Illinois also provide with exacting specificity that a deadline for discovery means that discovery must be *completed by that date.* Local Rule 16.1, Standing Order Establishing Pretrial Procedure,[2] *See also FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627 (7th Cir.2005)(stressing importance of compliance with the Local Rules). Thus it would be inappropriate and untimely under our local rules to serve a discovery request on the eve of the discovery deadline, because there would not be adequate time in which to complete discovery. *See Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir. 1994)(court did not abuse its discretion by granting defendants a protective order where plaintiff failed to request discovery until nine days before the cutoff, violating Standing Order); *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 531 (N.D.Ill. 2005)(collecting cases). It would be similarly inappropriate to provide expert reports so near to the close of discovery that the other side could neither depose the expert nor engage a rebuttal expert of its own. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D.Ill. 2005).

Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided until nearly the

---

[2] Local Rule 16.1, Standing Order Establishing Pretrial Procedure, provides:

> 4. Discovery Closing Date.
> In cases subject to this *Standing Order*, the court will, at an appropriate point, set a discovery closing date. Except to the extent specified by the court on motion of either party, discovery must be *completed* before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order. (emphasis in original).

close of discovery. For example, the Seventh Circuit upheld the district court's barring of the testimony of an expert witness identified just two days before the deadline. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295-96 (7th Cir. 1993). In *Smith v. Union Pacific R. Co.*, 168 F.R.D. 626, 629 (N.D.Ill. 1996), the defendant identified its expert six weeks before the close of discovery, but did not provide a report until the day discovery closed. Judge Shadur noted that the district court's Standing Order clearly required each party to complete all the preconditions to an opposing party's discovery in time to permit that opposing party to take care of his, her or its discovery needs before the close-of-discovery date. *Id.* at 629. Because the plaintiff could not have deposed the expert without violating Rule 26(b)(4) and the district court's standing order, the court barred the testimony of the defense expert under 37(c)(1).

The court faced a similar situation in *Rick v. Toyota Indus. Equipment Co., a Div. of Toyota Motor Sales, U.S.A., Inc.*, No. 93-1331, 1994 WL 484633, *3 (N.D.Ill. Sept. 2, 1994), where the plaintiff did not identify his expert until the last business day of discovery. The court applied the Standing Order to preclude consideration of expert testimony on summary judgment. In so doing, the court indicated that to correct the situation that plaintiff's tardiness had created would require the court to reopen discovery and to allow plaintiff's counsel to disrupt the orderly process of the litigation in such a way would not be appropriate. 1994 WL 484633, *4. Rather than allow the plaintiff to usurp the handling of the case, the court excluded the expert witness testimony from the record on summary judgment.

Expert testimony was also barred under like circumstance in *Verotix Systems, Inc. v. Ann Taylor, Inc.*, No. 02-8639, 2004 WL 2066889 (N.D.Ill. Aug. 24, 2004), where the court rejected Verotix's argument – the very argument the plaintiff advances here – that it was free to disclose experts at any time up to the close of discovery. The court explained that common sense had to be employed: "[o]bviously,

8

if the court ordered discovery to be completed by a certain date, notification to the opposing party of an expert on the last day of discovery ... would not leave the opposing party with sufficient time to conduct appropriate discovery relating to the disclosed expert." 2004 WL 2066889, *5.

Oblivious to the rules of this court and to the wealth of precedent prohibiting the course of conduct so blithely pursued by his counsel, the plaintiff insists that there is no rule or case law that required him to provide his expert reports any sooner than the last day of discovery. Even if one were to excuse the lack of knowledge of cases and rules boasted by the plaintiff, common sense would have dictated that the plaintiff's counsel's casual approach to their discovery obligations was inappropriate and essentially precluded the deposition of the experts – under Rule 26(b)(4)(A), within the discovery deadline since the defendants could not depose plaintiff's experts until they received their reports – and prohibited the defendants from engaging a rebuttal expert until after discovery had closed. *Verotix Systems*. Compare *Proffitt v. Ridgway*, 279 F.3d 503, 508 (7th Cir. 2002)(Posner, J.)("We cannot find a case on point but common sense and analogy carry the day.").[3]

Unwilling to accept the slightest responsibility for its violations of Judge Manning's deadlines and of the local rules of this court, the plaintiff incredibly seeks to shift the focus to the defendants. The argument apparently runs this way: all the difficulties could have been resolved by a phone call from the defendants. The argument – if it can be called that – is demonstrably wrong.

Local Rule 37.2's requirement that parties attempt to resolve disputes before they may apply to the

---

[3] *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353 (7th Cir. 1996) is not to the contrary. There, the court was concerned with a supplemental report, and there was no timing issue with the initial export report. In fact, the opposing party had more than enough time to secure a rebuttal expert and did so. Even the supplemental expert report was provided well before the expert's scheduled deposition. *Id.* at 1363.

court for resolution of the problem applies to motions to compel discovery and production of documents, not to motions to bar expert witnesses pursuant to Rule 37(c)(1).[4] The defendants are not seeking any discovery, they are asking that plaintiff be sanctioned for his failure to provide the required expert reports in a timely fashion. The sanction is automatic unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach*, 419 F.3d at 639; *Salgado*, 150 F.3d at 742.

Moreover, a phone call would have changed nothing. The harm had occurred at the time of the late disclosures, and the bell could not be unrung. A call would simply have signaled the defendants' capitulation to the reordering of the discovery schedule necessitated by the plaintiff's rule and discovery closure violations. Local Rule 37.2 did not obligate the defendants to be the hapless victims of the plaintiff's unapologetic disobedience to Judge Manning's discovery schedule. The argument that having failed to consult with them before filing their motion to bar precludes consideration of the motion is a *non sequitur* and calls to mind "George Jacques Danton's famous phrase--*l'audace, encore de l'audace, toujours de l'audace* (audacity, more audacity, always audacity)...." *United States v. Walsh*, 700 F.2d 846, 850 (2d Cir. 1983)(parenthesis in original).

---

[4] Local Rule 37.2 provides:

> To curtail undue delay and expense in the administration of justice, this court shall hereafter refuse to hear any and all *motions for discovery and production of documents* under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation.

(Emphasis supplied).

Even if Local Rule 37.2 were applicable under the circumstances presented here, a phone call would have accomplished nothing, and thus, the doctrine of futility, which is as applicable in the context of Local Rule 37.2 as it is in any other, *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 356 (collecting cases), excused the failure to call. The futility of a phone call – even if one were required – is further illustrated by the fact that even with the notice provided by the defendants' motion – filed February 9, 2006 – plaintiff has still not completed Mr. Anderson's report, and did not indicate that Dr. Mundt has not testified as an expert in the last four until he filed his responsive brief.

Perhaps the most uninformed aspect of the plaintiff's presentation is the contention that even if the disclosures were untimely they must be tolerated because there is plenty of time before trial for the defendants to hire expert witnesses and depose the plaintiff's experts. (*Plaintiff's Response to Defendants' Motion to Bar*, at 8). The argument essentially restructures the Federal Rules of Civil Procedure and makes discovery deadlines srt by the court irrelevant. The sole test is now whether there is time to depose the experts *after* discovery has closed. But that is not the scheme of the Federal Rules of Civil Procedure.

Under the Federal Rules of Civil Procedure, it is the court's prerogative – indeed, its duty – to manage its caseload and enforce deadlines. *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996). It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. Nor is it the prerogative of the violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery. *See Rick*, 1994 WL 484633, *3 (rejecting reopening discovery as a curative); *Aon Risk*

*Services, Inc. of Illinois v. Shetzer*, No.01-7813, 2002 WL 1989466, *6 (N.D.Ill. Aug. 27, 2002)(rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery); *Gregory v. Oliver*, No. 00-5984, 2002 WL 31972165, *1 (N.D.Ill. Dec. 27, 2002)(opportunity to depose expert does not make up for inadequate expert report).

Under Rule 37(c)(1), a party must show "substantial justification" for failing to disclose information required by Rule 26(a). In the instant case, the plaintiff has shown no, let along substantial, justification for its disregard of the local rules and its obligations under Judge Manning's discovery orders.[5]

### B.

### The Plaintiff's Export Reports Were Untimely And/Or Incomplete

Clearly, then, the expert testimony of both Dr. Fulero and Mr. Palumbo must be barred. Their reports were provided on the afternoon of January 13th – which was effectively the last day of discovery, the 15th being a Sunday. It is beyond debate that this left no time for depositions or discovery regarding their reports, or engaging rebuttal experts.

Mr. Anderson's report was provided to defendants just four days earlier with the same effective consequence: there was no time for assimilation and study of the report and for the scheduling of depositions and the hiring and/or analysis of rebuttal experts. And, to date, Mr. Anderson's report remains

---

[5] Rule 37 would seem to impose a greater burden on a party than the excusable neglect standard under Rule 6(b), which allows a court to enlarge the time to do an act required to be done within a specified time where, after the expiration of the specified period, the court is satisfied that the failure to act was the result of "excusable neglect." Here, there is a precise standard woven into Rule 37(c)(1) which would trump Rule 6. Moreover, Rule 6(b) only applies when there has been a motion made to permit the act to be done after the expiration of the prescribed time period. The plaintiff insists he has done nothing wrong and thus offers no excuse for his conduct and has filed no motion for enlargement of time.

facially incomplete. There is no list of cases in which he has testified as an expert as required by Rule 26(a)(2)(B), a shortcoming for which the plaintiff neither apologizes nor offers an explanation. (*Plaintiff's Response to Defendants' Motion to Bar*, at 6, 10-11). In short, his report is not only untimely, it remains incomplete, even in the wake of the defendants' present motion.

But Mr. Anderson's report suffers from greater flaws than a missing list of cases. Under Rule 26(a), expert reports must be "detailed and complete." Rule 26 Advisory Committee's note. A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor. *Salgado*, 150 F.3d at 742 n.6. It must not be "sketchy, vague or preliminary in nature." Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions. *Id.* The reason, of course, that experts must substantiate their opinions is that an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process. *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997).

Measured by this standard, Mr. Anderson's report flunks. It expresses no opinion – certainly not one that will be helpful to the jury as required by Rule 702, Federal Rules of Evidence. Here is what the report says on the subject matter about which Mr. Anderson proposes to testify:

> I have been asked about color fade on a 1992 Honda. . . . There are a couple of things to consider when talking about color fade. The first is whether the car was parked in a shaded area, as in a garage or under a canopy. If the car was covered most of the time the fade would have been minimal. If the car was parked outside a majority of the time in the sun, there will be a color fade. No one can say exactly how much color fade would occur. I will say that under extreme conditions, . . . the paint will fade badly. I have seen a green car after 10 years of being in the sun look almost light grey from all of the oxidation of the paint.

(*Memorandum of Law in Support of Defendants' Joint Motion to Bar*, Ex. F, at 2).

The plaintiff explains that the report is important because the defendants claim that one of the victims saw plaintiff come out of a green car. According to plaintiff, evidence will show that his car was far from green in appearance, and Mr. Anderson's report rebuts defendants' claim. (*Plaintiff's Response to Defendants' Motion to Bar*, at 6). But the report does not indicate how Mr. Anderson will testify about the car in question. It does not identify the "particular result" Mr. Anderson reached, let alone the "how" or the "why." It is hardly more informative than if it had said, "sometimes a car's finish will fade, sometimes it won't." It certainly meets the definition of "sketchy, vague and preliminary in nature," and ought to be excluded as such. Even if it had been provided in a timely manner, it does not meet the requirements of Rule 26(a)(2)(B). Because of the tardiness and incompleteness of his report, Mr. Anderson's testimony must be barred under Rule 37(c)(1).[6]

Finally, there is the earliest of the reports, that of Dr. Mundt, produced about two weeks before the discovery deadline. In its original form, it failed to include a *curriculum vitae*, a prior case list, or a fee schedule – all required under Rule 26(a)(2)(B). About one week before discovery closed, on January 6th, plaintiff provided the *CV* and the fee schedule, and has recently indicated that Dr. Mundt has not been an expert witness in the preceding four years. So, the report was not complete for the purposes of Fed.R.Civ.P. 26(a)(2)(B) until just five business days before the close of discovery. *See Benedetti v. Soo Line R. Co*, No. 03-6975, 2004 WL 2222281, *4 (N.D.Ill. Sept. 29, 2004)(striking report that failed to

---

[6] The touchstone of admissibility under Rule 702 is whether the evidence will be helpful to the jury. It is difficult to see how testimony that car paint fades in the sun will help the jury. This would seem to be explication of the obvious and the jury would hardly need an "expert" to tell them that which is a matter of common knowledge. But this is not the basis on which Mr. Anderson's report is being excluded.

14

include resumé, fee schedule, and list of cases); *Expeditors International of Washington, Inc. v. Vastera, Inc.*, No. 04-0321, 2004 WL 406999, *2 (N.D.Ill. Feb. 26, 2004)(discussing significance of qualifications and prior experiences as an expert witness).

In the case of Dr. Mundt, unlike the other three witnesses, the defendants at least had an incomplete report in hand about two weeks before the close of discovery. The question becomes whether that would have been sufficient time to conduct to notice and conduct a deposition of Dr. Mundt, and to hire a rebuttal expert if need be. *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 327(discussing reasonable notice for depositions under Rule 30(b)(6)). While there is nothing to condone in plaintiff's insouciant attitude towards their discovery obligations and Judge Manning's schedule, it is at least arguable that defendants could have deposed Mundt within the final two weeks of discovery.

But it is exceedingly unlikely that if Dr. Mundt's deposition warranted it, they could have obtained their own expert and provided plaintiff with adequate and timely disclosure before discovery was to close on January 15, 2006. The two weeks between December 28th, when the disclosures were served, and January 15th, were really not two weeks at all. The reality was that it was Christmas and the New Year and allowances had to be made. As discussed earlier, acquiescence in the late disclosures would simply have extended the discovery schedule without judicial approval and in violation of the fundamental principle that "[d]isclosures must not be used as a means to extend a discovery deadline." *See Salgado*, 150 F.3d at 742 n.6. *See also Carter v. Finely Hosp.*, No. 01-50468, 2003 WL 22232844, *2 (N.D.Ill. Sept. 22, 2003).

The plaintiff – who has the burden of showing his failure to timely provide the report was harmless or substantially justified, *Keach*, 419 F.3d at 639; *Salgado*, 150 F.3d at 742 – offers nothing convincing

15

to demonstrate that discovery could have been completed on time. He relies entirely on the lack of a phone call from defendants – a phone call which would have accomplished nothing beyond signaling the success of the plaintiff's unilateral and illicit attempt to extend the discovery schedule.

It is well to recall that the claim for emotional distress had been in play since July 15, 2004. Yet, the plaintiff's counsel did not have Dr. Mundt examine Mr. Finwall him until a year and a half later, on December 10, 2005. (*Memorandum of Law in Support of Defendants' Joint Motion to Bar*, Ex. D, at 1). No excuse or justification for the lateness of the examination which resulted in the untimely disclosure of Dr. Mundt's report is offered. There is simply the intractable and unacceptable "so what" argument. In the end, although the timing of Dr. Mundt's report was not as untimely as those of the plaintiff's other experts, it was untimely enough to require exclusion.

## CONCLUSION

Deadlines such as those envisioned by Rule 26(a)(2)(B) and 37(c)(1) are essential to the maintenance of a smooth and orderly flow of cases. *Harris*, 102 F.3d at 1433; *Golden Elevator*, 27 F.3d at 302. In the instant case, the plaintiff's counsel "knew of the deadlines established by the court but chose to ignore them." *Castro v. Board of Education of the City of Chicago*, 214 F.3d 932, 934 (7th Cir. 2000). If litigants are allowed to disregard deadlines, as has the plaintiff's counsel in this case, the necessary advantages that deadlines secure will cease to exist, and court scheduling orders will become meaningless. *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). Procrastinators (to say nothing of those seeking some illicit tactical advantage) will simply be motivated not to comply with schedules carefully set by courts and announced with a kind of unambiguous finality Judge Manning expressed in this case. *Compare, High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1311

(10th Cir. 2004)(McConnell, J.). "Judges must be able to enforce deadlines." *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991).

What the Seventh Circuit said in *Spears v. City of Indianapolis, supra.*, bears repeating:

> Deadlines, in the law business, serve a useful purpose and reasonable adherence to them is to be encouraged. As the Fifth Circuit noted in *Geiserman v. MacDonald*, 893 F.2d 787, 791 (1990): '[D]elays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

74 F.3d at 158.

It is no answer to say that the plaintiff may be disadvantaged by his counsel's conduct. That is true in every case where exclusion is warranted under Rule 37 or any other rule specifying the consequences of acts or omissions by a party's lawyer. Those rules properly recognize that clients are properly responsible for their counsel's conduct and it is to them that they must look in the event of omissions. Even more importantly, they recognize that there are societal interests in the functioning of the judicial system that transcend the immediate interests of a party in a particular case. Justice Cardozo perhaps said it best:

> Our jurisprudence has held fast to Kant's categorical imperative, 'Act on a maxim which thou canst will to be law universal.' It has refused to sacrifice the larger and more inclusive good to the narrower and smaller. A contract is made. Performance is burdensome and perhaps oppressive. If we were to consider only the individual instance, we might be ready to release the promisor. We look beyond the particular to the universal, and shape our judgment in obedience to the fundamental interest of society that contracts shall be fulfilled.

Cardozo, The Nature of the Judicial Process, 139-140 (1921).

For the foregoing reasons, the defendants' joint motion to bar the opinions of plaintiff's experts [57 ] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/31/06