# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY FINWALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 CV 4663 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

A stranger approached an eight-year-old girl in her front yard and asked her to go with him on a field trip. The girl's mother—defendant Mary Boswell—overheard from inside the family's home, went outside, and told the man to leave, which he did. Later the family reported the incident to police. A couple of weeks later, a stranger approached another neighborhood girl (a friend of the Boswell girl) and asked her for her name, but made no physical contact and did not frighten the girl. When defendant Boswell learned of the second incident, she reported it to police.

About a week later, detectives arrested plaintiff Timothy Finwall on April 11, 2001, for attempted abduction, based in part upon information from the two girls who had been approached, as well as information from their mothers. Finwall was tried and acquitted, presumably based upon the strength of his alibis—he was at work during the first incident and was golfing with two Chicago firefighters during the second. He sued Boswell, two police detectives—defendants Martin Garcia and Dion Boyd—and the City of Chicago alleging constitutional claims of false arrest, unlawful detention, conspiracy and due process violations, as well as state law claims of malicious prosecution and intentional infliction of emotional distress.

The parties have filed cross-motions for summary judgment. For the reasons that follow, the court denies Finwall's motion, and grants in part and denies in part the defendants' motions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court may grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party may withstand summary judgment only by showing that a dispute over a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

## ANALYSIS

*False Arrest/False Imprisonment and Unlawful Detention (Counts I – IV)*

First, the court will address Finwall's claims brought under 28 U.S.C. § 1983 for false arrest/false imprisonment (Counts I & II) and for unlawful detention (Counts III & IV). Section 1983 creates a federal cause of action for the "deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. To establish a claim under § 1983, the plaintiff must show that (1) the defendant acted under the color of state law or invoked state authority, and (2) deprived the plaintiff of a constitutionally protected right. *See Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Section 1983 does not provide substantive rights but is "an instrument for vindicating federal rights conferred elsewhere," and so the court must first evaluate which of the plaintiff's constitutional rights was violated. *Spiegel v. Rabinowitz*, 121 F.3d 251, 254 (7th Cir. 1997). Therefore, the first step in analyzing claims under § 1983 is to determine what constitutional rights are at issue. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("the initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated.")

In Counts I through IV of the complaint, Finwall alleges that the defendants arrested him without probable cause and detained him for an unreasonable amount of time (more than 48 hours) before he was arraigned. The allegations cover the period of time between Finwall's arrest and his arraignment and therefore are governed by the Fourth Amendment. *See Armstrong v. Squadrito*, 152 F.3d 564, 569-70 (7th Cir. 1998) (the Fourth Amendment "governs the period of confinement between arrest without a warrant and a preliminary hearing at which a determination of probable cause is made.") As such, Finwall has alleged a constitutional claim of false imprisonment, of which false arrest is a component. *See Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). In his complaint, Finwall sets forth two theories of liability in support of his false imprisonment claims: (1) Finwall's arrest without probable cause (Counts I & III); and (2) his detention for more than 48 hours without being charged (Count II & IV).

**Statute of Limitations**

Initially, the court will examine the timeliness of Finwall's false imprisonment claims. The statute of limitations for constitutional claims brought in federal court under 28 U.S.C. § 1983 is the same as the personal injury statute of limitations of the state in which the conduct

occurred. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Illinois law, that period is two years. *See* 735 Ill. Comp. Stat. 5/13-202. The question, then, is on what date did the limitations period begin to run? Previously, the court held that the two-year period began to run when Finwall was acquitted on July 22, 2002, and concluded that his claims filed less than two years later on July 15, 2004, were timely. *See* Memorandum and Order dated January 7, 2005. However, the Supreme Court has since decided in *Wallace v. Kato* that false imprisonment claims accrue on the date the plaintiff is arraigned or released from custody before being charged. *See Wallace*, 127 S. Ct. at 1096. It is undisputed that Finwall was arraigned on April 13, 2001 and therefore the limitations period ended on April 13, 2003, well before Finwall filed suit.

Finwall nevertheless contends that his false imprisonment claims are timely because his claims were also the subject of a class-action lawsuit, the filing of which tolled the statute of limitations. "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). For tolling to apply, the claims from the class action do not need to be identical to Finwall's—substantial similarity is enough. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled.") *Spann v. Community Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785, at *6 (N.D. Ill. Mar. 30, 2004). The requirement that the class and individual claims be substantially similar guarantees

that the defendant will not be unfairly surprised by the nature of the otherwise time-barred individual claims. *See Am. Pipe*, 414 U.S. at 554-55.

The class action that Finwall contends tolled the statute of limitations on his individual claims was *Lopez v. City of Chicago*, Case No. 01 CV 1823 (N.D. Ill.), filed March 15, 2001. In *Lopez*, the plaintiff alleged claims under § 1983 for, among other things, unlawful detention. The plaintiff also sought class certification, and in the motion for certification proposed a class consisting of the following persons:

I. All persons arrested by the Chicago Police Department without an arrest warrant from March 15, 1999 to October 15, 2003 and who were detained in excess of 48 hours before approval of charges or release.

II. All arrestees detained in a Chicago Police Department Detective Division interrogation room(s) in excess of 24 hours before approval of charges or release at any time from March 15, 1999 to October 15, 2003.

The plaintiff in *Lopez* withdrew his motion for class certification on May 20, 2004, before the court had ruled on it, and the parties subsequently settled. Of the defendants in this case, only the City of Chicago was also a defendant in *Lopez*.

The defendants contend that if *Lopez* tolled the statute of limitations at all, it tolled the limitations period only for Finwall's claims based upon the length of his detention (Counts II & IV). In support, they argue that the only class claim proposed in *Lopez* involved the length of class members' detention in police custody, and therefore *Lopez* could not have tolled the limitations period on Finwall's claim that he was arrested without probable cause.

The court disagrees with the defendants' characterization of the proposed class claims in *Lopez*. According to the motion for class certification in that case, the proposed class would have consisted of persons who were arrested *without an arrest warrant* and who were *detained in*

*excess of 48 hours*. The proposed claims would therefore have involved issues surrounding not only the length of class members' detention, but also whether their warrantless arrests were supported by probable cause.

Furthermore, a substantial overlap of issues exists. For instance, the proposed class members could have shown that their detention was unlawful both with evidence that it was excessive and that their arrest occurred despite a lack of probable cause. The City of Chicago meanwhile could have defended based upon the existence of probable cause, which is an absolute defense to claims of "wrongful arrest, false imprisonment, or malicious prosecution." *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). In short, probable cause and length of detention would both have been at issue in the class action proposed in *Lopez*, and therefore the statute of limitations was tolled for both false arrest and unlawful detention claims. The tolling continued until May 20, 2004, the date the plaintiff in *Lopez* withdrew his motion for class certification, freeing Finwall to file his individual suit two months later.

In summary, *Lopez* tolled the accrual of Finwall's false arrest and unlawful detention claims until May 20, 2004. Therefore his claims, filed July 15, 2004, are timely. However, the only defendant common to both *Lopez* and the instant suit is the City of Chicago, and therefore Finwall's false arrest and unlawful detention claims against individual defendants Garcia and Boyd (Counts I & III) are time-barred. Finwall's argument that his claims against Garcia and Boyd are timely under the discovery rule is unfounded: although he may not have learned the specifics of the detectives' alleged fabrication of evidence until their depositions, he knew at the time of his arrest that no probable cause existed. *See Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006) (civil right suit should be filed at the time of the false arrest); *Nieves v.*

*McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) (claim accrues at the time of the false arrest because plaintiff "had ample reason to know of the injury then and there."). The defendants are therefore entitled to summary judgment on Counts I and III. Finwall's motion for summary judgment on Counts I and III is denied.

Having concluded that Finwall's false arrest and unlawful detention claims against the city are not time-barred, the court will now address the defendants' remaining arguments in favor of summary judgment on those claims.

**False Arrest (Count II)**

The defendant City of Chicago contends that it is entitled to summary judgment on Finwall's false arrest claim because detectives had probable cause to arrest him. Police have probable cause to arrest when facts and circumstances known to the officers would warrant a prudent person's belief that a suspect had committed an offense. *See Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002).

The City contends that detectives had probable cause to arrest Finwall based upon information they received from various witnesses. The information (much of which Finwall disputes) included the following: (1) defendant Boswell helped police create a composite sketch of the man who approached her daughter; (2) an anonymous caller identified Finwall as the man depicted in the sketch; (3) based upon the anonymous tip, police retrieved an old mug shot of Finwall from an unrelated arrest, which Boswell positively identified as the man who approached her daughter; (4) Boswell, her daughter, and the other girl positively identified Finwall in a lineup; and (5) Finwall owned a green Honda automobile which matched the description of a car Boswell reportedly saw when her daughter was approached.

As discussed earlier, probable cause is normally an absolute defense to a claim of false arrest. *See Mustafa*, 442 F.3d at 547. However, the defense is inapplicable if probable cause was based upon fabricated evidence. *See Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Finwall has identified evidence of fabrication. For instance, Finwall has evidence of the photo array created by Garcia and Boyd for Boswell to view, which Finwall contends was overly suggestive because his picture with short hair was surrounded by pictures of other suspects sporting longer hairstyles. Because Boswell had described the suspect as having short hair, Finwall contends that the defendant officers left Boswell little choice but to positively identify him from the lineup. Finwall contends that the detectives also created an overly suggestive lineup for Boswell and the other witnesses to view by populating it with mostly long-haired persons who did not at all resemble Finwall.

Additionally, Finwall asserts that Garcia and Boyd convinced Boswell to falsely claim that she saw a green car similar to Finwall's near her home during the incident with her daughter. In support, Finwall cites the deposition of Robert Sanfratello, who was present during a conversation between Boswell and her brother. According to Sanfratello, Boswell told her brother that the defendant detectives could arrest Finwall for attempted abduction only if a car had been involved, and that the detectives repeatedly asked if she had seen a green car. Even though she saw no car at the time of the incident, Boswell allegedly agreed that she had seen Finwall in a green car just so police would arrest him.

The defendants deny that any of these events occurred, and therefore the question of whether evidence was fabricated is disputed. Because the issue of whether police had probable cause to arrest Finwall turns on facts that are in dispute, resolution on summary judgment is

precluded. The City has identified no other basis for summary judgment on Finwall's false arrest claim (other than the previously-rejected timeliness argument), and therefore the motion for summary judgment on Count I is denied.

**Unlawful Detention (Count IV)**

Finwall concedes that the length of his detention totaled 43 hours. *See* Plaintiff's Combined Response to All Defendants' Motions for Summary Judgment at 11 ("All told, Finwall was kept for 43 hours as a result of having to endure extra unrelated line-ups.") Detentions of 48 hours or less are presumptively reasonable. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). However, a plaintiff may overcome that presumption by showing that he was held for longer than necessary so that officer could investigate unrelated crimes. *See Willis v. City of Chicago*, 999 F.3d 284, 288-89 (7th Cir. 1993) (once police complete their investigation of a crime for which they had probable cause to arrest the defendant, they may not continue to detain the defendant to investigate unrelated crimes, even if the total detention is less than 48 hours). The defendants admit that Finwall was held for an extra 24 hours so that they could place him in a line-up for an unrelated crime. Response to Finwall's Rule 56.1(a)(3) Statements of Material Facts at ¶ 65. Finwall therefore has evidence to overcome the presumption that his detention was reasonable, and as a result the City of Chicago is not entitled to summary judgment on this basis.

Alternatively, the City contends that Finwall has no evidence of a policy or widespread practice of holding suspects longer than necessary to investigate other crimes, an essential prerequisite to municipal liability. *See Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006) (a municipality is liable under § 1983 only if the plaintiff's injury was caused by the

execution of a government policy or custom, citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  But in response to Finwall's Rule 56.1 Statement of Facts, the defendant detectives confirmed detaining Finwall in accordance with a "crime pattern file" policy, under which detectives are required to review files of crimes that are similar but unrelated to the crime for which the suspect is being held.  Under the alleged policy, detectives are also required to detain the suspect so that they can investigate him for any similar crimes they found during their search of the "crime pattern file," even if they do not have probable cause to do so.  The detectives' admissions constitute evidence of the existence of a city policy or custom to unlawfully detain suspects, and therefore the City is not entitled to summary judgment on this basis either.

***Fourteenth Amendment Due Process (Count V)***

A defendant's constitutional right to due process includes the right to a fair trial free of testimony known to be perjured, and to advance disclosure of exculpatory evidence.  *See Giglio v. United States*, 405 U.S. 150, 153 (1972) (government's knowing use of false testimony violates due process); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (withholding exculpatory evidence from the defendant violates due process).  Finwall contends that detectives Garcia and Boyd denied him a fair trial in the following ways:  (1) they fabricated evidence by preparing suggestive lineups for the witnesses to view and by getting Boswell to claim that she saw a green car at the crime scene; (2) they failed to disclose the alleged fabrication as required under *Brady*; and (3) Boyd committed perjury when he testified at trial that one of the girls told him about seeing a green car; the truth is that Boyd admits he never talked to the girl.  The defendant detectives contend that they are entitled to summary judgment on Finwall's due process claim because (1) Finwall had independent knowledge of their alleged fabrication of evidence so they

Page 10

had no duty to disclose it, (2) Boyd is entitled to absolute immunity for his trial testimony, and (3) the detectives have qualified immunity. The court will consider each argument in turn.

First, the detectives argue that Finwall knew soon after his arrest about the allegation that they improperly coaxed Boswell to report seeing a green car. Specifically, according to Finwall's deposition testimony, Finwall talked to Robert Sanfratello two days after his arrest, at which time Sanfratello described overhearing Boswell admit that detectives coaxed her into falsely reporting the presence of a green car at the crime scene. *See* Finwall Dep. at 153:2 - 154:5 (attached as Exhibit J to the Statements of Material Facts of Defendants City of Chicago, Boyd, and Garcia). Prosecutors (and the detectives who report to the prosecutors) have no *Brady* obligation to disclose exculpatory evidence that the defendant already knows. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), *overruled on other grounds by Wallace*, 440 F.3d 421. Because it is undisputed that Finwall already knew about the alleged fabrication of evidence by Boyd, Garcia and Boswell, no *Brady* violation occurred.

However, Finwall also contends that the defendant detectives denied him a fair trial by creating an overly suggestive photo array and an equally suggestive lineup for Boswell and the other witnesses to view, and by failing to disclose that they had done so. There is no evidence that Sanfrentello told Finwall anything about suggestive lineups. As a result, the defendants have not shown that Finwall independently knew about the alleged impropriety or that disclosure under *Brady* was excused. The defendants' only other argument for summary judgment is that Finwall never moved to suppress the lineups in his criminal trial. Apparently their point is that Finwall forfeited his claim that he was denied a fair trial by failing to contest the use of the lineups in his state court trial. But the defendants have cited no authority to support such an

argument, so the court will not address it further. *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional issues).").

Next, Boyd contends that even if he perjured himself at trial, he is not liable for the resulting injury because of absolute immunity. Normally police officers testifying for the prosecution have absolute immunity from a damages suit based upon their trial testimony. *See Gauger*, 349 F.3d at 358. However, an officer will not be shielded from liability if he was a "complaining witness," meaning the instigator of the prosecution or pushed aggressively for the prosecution. *Id.* Whether or not a witness was a complaining witness is a question of fact. *See Cervantes v. Jones*, 188 F.3d 805, 809-10 (7th Cir. 1999).

The defendants contend that all evidence points to Boswell and the two young victims as being the complaining witnesses because "[w]ithout their signed complaints and testimony, plaintiff would never have even been arrested, let alone, prosecuted." However, as discussed earlier, Finwall has ample evidence that those witnesses' statements and testimony were tainted by Boyd and Garcia, who allegedly coaxed the witnesses into fingering Finwall. If believed, Finwall's evidence could allow reasonable jurors to conclude that Boyd and Garcia were the driving forces behind Finwall's prosecution and absolute immunity would not should not shield Boyd from liability. Accordingly, at this stage of the litigation Boyd is not entitled to summary judgment on the basis of absolute immunity.

Alternatively, the defendant detectives contend that they are entitled to summary judgment because qualified immunity shields them from liability. However, qualified immunity does not shield officers from claims that they fabricated evidence. *See Wallace*, 440 F.3d at 429.

To sum up, the motion for summary judgment on Finwall's due process claim is denied except that summary judgment is granted on Finwall's theory that the defendants violated *Brady* and his right to a fair trial based upon their failure to disclose that they allegedly coaxed Boswell into reporting the existence of a green car at the crime scene.

***Conspiracy (Count VI)***

In Count VI, alleged against only Boswell, Finwall contends that Boswell conspired with the defendant detectives to deprive Finwall of his constitutional rights. The only evidence that Boswell conspired with the detectives is that, at the detectives' behest, she falsely reported seeing a green car near the crime scene in order to get him arrested. Such evidence, if true, might support a claim that Boswell conspired to have Finwall falsely imprisoned in violation of the Fourth Amendment, or that she conspired to fabricate evidence in order to deprive him of due process under the Fourteenth Amendment. However, the court has already granted summary judgment on the false imprisonment and *Brady* claims against the detectives, and therefore Finwall cannot establish a conspiracy claim against Boswell on those bases. *See Ollins v. O'Brien*, Nos. 03 C 5795, 03 C 7175, 2006 WL 1519286, *2 (N.D. Ill. May 26, 2006) (if a plaintiff cannot establish a constitutional claim against a defendant—including a time-barred under *Wallace*—then the plaintiff also cannot establish any conspiracy claim based upon the same conduct).

As for Finwall's claim that Boswell conspired to deny him a fair trial by fabricating evidence, Finwall cannot prevail because it is undisputed that the alleged fabrication (her report of seeing a green car) was not used as evidence at trial. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 281-82 (1993) (J. Scalia, concurring) ("petitioner cites, and I am aware of, no authority for the proposition that the mere false preparation of evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.") Accordingly, the court grants Boswell's motion for summary judgment on count VI.

*Malicious Prosecution (Count VII) and Intentional Infliction of Emotional Distress (Count VIII)*

On January 7, 2005, this court entered an order dismissing the state law claims against the individual defendants. *See* Memorandum and Order dated Jan. 7, 2005 ("this Court dismissed the state law claims against the Individual Defendants but not against the City.") Inexplicably, the parties have devoted considerable effort to briefing whether or not the defendants are entitled to summary judgment on these same claims. Because the claims have already been dismissed, the motion for summary judgment on these claims (Counts VII and VIII) is denied as moot.

*Respondeat Superior – Intentional Infliction of Emotional Distress (Count IX)*

Finally, the City of Chicago moves for summary judgment on Finwall's state law claim of intentional infliction of emotional distress. Finwall contends that the City is liable under a theory of respondeat superior for the emotional distress allegedly inflicted by defendants Garcia, Boyd and Boswell. The court previously dismissed the claims against the individual defendants as time-barred. *See* Memorandum and Order dated January 7, 2005, at 6 n.3. Because the underlying claims against the individual defendants have been dismissed, the respondeat superior claim against the City must also be dismissed under Illinois' Towns Doctrine. *See Bachenski v.*

*Malnati*, 11 F.3d 1371, 1377-80 (7th Cir. 1993) ("when *respondeat superior* is the sole asserted basis of liability against a master for the tort of his servant," the claim against the master must be dismissed if the claim against the servant is time-barred). Accordingly, the City of Chicago is entitled to summary judgment on this count.

*Indemnification (Count X)*

Although the City of Chicago has moved for summary judgment on Finwall's entire complaint, it has offered no argument why it is entitled to summary judgment on Finwall's claims for indemnification. The court will not craft arguments for the City, and therefore summary judgment on this count is denied.

## CONCLUSION

For the reasons stated, the parties' various motions are resolved as follows:

- Finwall's motion for summary judgment on counts I and III [155-1] is denied;

- Boswell's motion for summary judgment [138-1] is granted on count VI, and denied as moot on counts VII and VIII;

- The motion for summary judgment of the City of Chicago and officers Garcia and Boyd [131-1] is granted in part and denied in part as follows: summary judgment is denied on counts II, IV, V, and X; denied as moot on counts VII and VIII; and is granted on counts I, III, and IX.

Taking into account the counts that have either been dismissed or the subject of a successful motion for summary judgment, the counts that remain are: II and IV (against the City of Chicago); V (against Garcia & Boyd); and X (against the City of Chicago). Having dismissed or granted summary judgment on all claims against Boswell, the clerk is directed to terminate her as a defendant. The remaining parties shall report for status on Wednesday, May 31, 2007, and be prepared to agree to a firm trial date and to schedule any other outstanding pretrial matters.

ENTER:

DATE: May 16, 2007

_____
Blanche M. Manning
United States District Judge